**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

DELVON KNIGHT,                              :

          Petitioner                      :    CIVIL ACTION NO. 3:26-1508

    v.                                        :      (JUDGE MANNION)

GINA CLARK, *et al.,*                        :

          Respondents                  :

## MEMORANDUM

Currently before the Court is *pro se* Petitioner Delvon Knight ("Knight")'s petition for a writ of habeas corpus under 28 U.S.C. §2254. For the reasons stated below, the Court will order Knight to show cause why the Court should not dismiss his petition due to his failure to exhaust his state-court remedies or because it is time barred.

## I.    BACKGROUND

On December 19, 2019, Knight was sentenced to a term of state incarceration for a minimum of 21 months to a maximum of 42 months after pleading guilty to possession of a controlled substance with intent to manufacture or deliver in the Court of Common Pleas of York County ("YCCP"). *See* (Doc. 1 at 4–5, 8); Docket, *Commonwealth v. Knight*, No. CP-

67-CR-4280-2019 (York Cnty. Ct. Com. Pl.) ("YCCP Dkt.").[1] Knight did not appeal from his sentence, and he has not pursued any petitions for post-conviction collateral relief to date. *See* (Doc. 1 at 5–8; YCCP Dkt.).

On May 12, 2026, Knight, who is currently incarcerated at Pennsylvania State Correctional Institution Chester, commenced the instant action by filing his Section 2254 petition in the United States District Court for the Eastern District of Pennsylvania ("EDPA").[2] On June 2, 2026, the EDPA transferred Knight's Section 2254 petition to this Court. (Docs. 4, 5.)

---

[1] The Court takes judicial notice of the docket entries in Knight's underlying state-court criminal cases. *See Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) (unpublished) ("We may take judicial notice of the contents of another Court's docket."); *Mickell v. Lycoming Cnty. Cent. Collections Off. & Admin.*, 821 F. App'x 74, 75 (3d Cir. 2020) (unpublished) (taking judicial notice of Court of Common Pleas criminal docket); *Wilson v. McVey*, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket). These dockets are publicly accessible through the Unified Judicial System of Pennsylvania Web Portal (https://ujsportal.pacourts.us/CaseSearch) (the "Portal"). *See Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("Pennsylvania's Unified Judicial System provides online access to the docket sheets for criminal cases, and this Court may take judicial notice of those public dockets." (citations omitted)).

[2] The federal "prisoner mailbox rule" provides that a *pro se* prisoner's habeas petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988). Here, Knight included a declaration that he placed his habeas petition in the prison mail system on May 12, 2026. *See* (Doc. 1 at 19). As such, the Court uses May 12, 2026, as the petition's filing date, even though the EDPA's Clerk of Court did not docket it until May 18, 2026.

In his habeas petition, Knight raises a single claim. He asserts that he is currently confined in state prison beyond his maximum sentence date, which was purportedly October 6, 2024. *See* (Doc. 1 at 8). For relief, he seeks his immediate release from incarceration. *See* (*id.* at 18).

## II.   LEGAL STANDARDS

### A.   Preliminary Review of Section 2254 Habeas Petitions

District courts are tasked with conducting a preliminary review of Section 2254 habeas petitions. *See* R. 4, 28 U.S.C. foll. §2254. When conducting this review, "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." *Id.*; *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994) (explaining that district courts are "authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." (citing R. 4, 28 U.S.C. foll. §2254)).

### B.   Section 2254 Habeas Petitions Generally

A petition for writ of habeas corpus is the exclusive federal remedy for a state prisoner challenging the "very fact or duration" of their confinement and seeking "immediate release or a speedier release from that imprisonment." *Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973); *Leamer*

- 3 -

*v. Fauver*, 288 F.3d 532, 542–44 (3d Cir. 2002). A district court is authorized to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that [they are] in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Claimed violations of state law standing alone, will not entitle a petitioner to relief, absent a showing that those violations are so great as to be of a constitutional dimension. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Furthermore, a state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must have exhausted the remedies available to them in the courts of the state. *See* 28 U.S.C. §2254(b)(1)(A).

## III.    DISCUSSION

Before addressing the exhaustion issue apparent from the Court's initial review of Knight's Section 2254 petition, the Court must preliminarily discuss the precise nature of his habeas claim because it is implausible on its face. As indicated above, Knight asserts that he remains incarcerated in a Pennsylvania state correctional institution despite his maximum sentence

- 4 -

purportedly expiring on October 6, 2024, *i.e.*, an over-detention claim. This claim is implausible for multiple reasons. First, the instant habeas petition appears to be Knight's first attempt to seek release from confinement. In other words, Knight had not challenged his continued incarceration despite allegedly being detained for approximately 18 months beyond his maximum sentence. Second, Knight does not allege that prison officials interfered with his attempts to seek his release through habeas relief, so he apparently had the means to challenge his confinement at any time prior to filing his petition in this case. Third, it is highly improbable that the Commonwealth of Pennsylvania Department of Corrections would continue to confine Knight for more than 18 months after the expiration of his maximum sentence. Fourth, and finally, Knight's claim is inconsistent with other aspects of the petition and the publicly available dockets from Knight's other Pennsylvania state criminal cases.

Concerning his habeas petition, although Knight asserts that his maximum release date was October 6, 2024, this date is inconsistent with the sentence imposed by the YCCP on December 19, 2019. As explained above, the YCCP sentenced Knight to a period of state confinement that should have lasted no more than 42 months, *i.e.*, until June 19, 2023. *See* (Doc. 1 at 4). Yet, Knight does not allege that his maximum sentence date

- 5 -

was June 19, 2023; instead, he claims it was October 6, 2024. *See* (*id.* at 8). He does not attempt to explain the more-than-one-year discrepancy between his asserted maximum sentence date and the Court's calculated release date.

In addition, and perhaps more importantly, Knight indicates in his petition that his maximum sentence date was "altered" after he received a "new conviction" on August 29, 2025. *See* (*id.* at 17). Thus, his representation that his maximum sentence date was October 6, 2024, appears to be incorrect if his maximum sentence date somehow changed after his "new conviction" on August 29, 2025.

As for Knight's criminal records available on the Portal, they show that at the time of Knight's sentencing in the YCCP, he was already serving a state sentence of a minimum of one year to a maximum of five years after the Lancaster County Court of Common Pleas ("LCCP") determined that he committed a probation/parole violation on September 15, 2017. *See* Docket, *Commonwealth v. Knight*, No. CP-36-CR-941-2016 (Lancaster Cnty. Ct. Com. Pl.).[3] It is unclear from Knight's YCCP docket whether the YCCP

---

[3] On September 21, 2016, Knight pleaded guilty to escape (18 Pa. C.S. §5121(a)), and he was sentenced to a period of county incarceration for a minimum of nine months to a maximum of 23 months, along with a consecutive period of two years' probation. *See id.*

directed that Knight's sentence would run consecutively or concurrently with the LCCP's sentence. *See* YCCP Dkt. However, if the YCCP imposed a consecutive sentence, it could explain why Knight's reference to his maximum sentence date is inconsistent with the maximum sentence date calculated by reviewing his YCCP sentence in isolation.

Knight also pleaded guilty to multiple narcotics and other criminal offenses in four separate criminal cases prosecuted in Lancaster County in 2024 and 2025. *See* Docket, *Commonwealth v, Knight*, No. CP-36-CR-3098-2024 (Lancaster Cnty. Ct. Com. Pl.) (possession of a controlled substance (35 P.S. §780-113(a)(16)) and possession of drug paraphernalia (35 P.S. §780-113(a)(32))); Docket, *Commonwealth v. Knight*, No. CP-36-CR-3185-2024 (Lancaster Cnty. Ct. Com. Pl.) (possession of a controlled substance with intent to deliver (35 Pa. C.S. §780-113(a)(30)) and possession of marijuana (35 Pa. C.S. §780-113(a)(31))); Docket, *Commonwealth v. Knight*, No. CP-36-CR-4007-2024 (Lancaster Cnty. Ct. Com. Pl.) (possession of a controlled substance with intent to deliver, criminal use of a communication facility (18 Pa. C.S. §7512(a)), and driving while operating privilege is suspended or revoked (75 Pa. C.S. §1543(a))); Docket, *Commonwealth v. Knight*, No. CP-36-CR-1409-2025 (Lancaster Cnty. Ct. Com. Pl.) (possession of a controlled substance with intent to deliver and conspiracy

to possess a controlled substance with intent to deliver (18 Pa. C.S. §903)). He was sentenced in each case on August 29, 2025. Docket, *Commonwealth v, Knight*, No. CP-36-CR-3098-2024 (Lancaster Cnty. Ct. Com. Pl.) (sentenced to a period of county incarceration for a minimum of time served to a maximum of 12 months); Docket, *Commonwealth v. Knight*, No. CP-36-CR-3185-2024 (Lancaster Cnty. Ct. Com. Pl.) (sentenced to a period of county incarceration for a minimum of one year less one day to a maximum of two years less one day, to be followed by two years of county probation); Docket, *Commonwealth v. Knight*, No. CP-36-CR-4007-2024 (Lancaster Cnty. Ct. Com. Pl.) (sentenced to an aggregate period of county incarceration for a minimum of one year less one day to a maximum of two years less one day, to be followed by two years of county probation); Docket, *Commonwealth v. Knight*, No. CP-36-CR-1409-2025 (Lancaster Cnty. Ct. Com. Pl.) (sentenced to an aggregate period of county incarceration for a minimum of six months to a maximum of 23 months). These criminal convictions and sentence, particularly Knight's conviction for driving while his operating privileges were suspended or revoked, show that Knight has not been continually incarcerated in state prison since October 6, 2024. They also might explain why Knight asserts that his maximum sentence in his YCCP case was "altered" on August 29, 2025. (Doc. 1 at 17.)

- 8 -

Based on the Court's review of the totality of Knight's petition and his criminal records on the Portal, it appears that he was released on parole at some point after commencing his YCCP sentence. It also appears that while on parole, Knight committed several criminal offenses in Lancaster County, resulting in the Pennsylvania Parole Board holding a parole revocation hearing during which it revoked his parole, recalculated his maximum sentence on his YCCP sentence, and recommitted him to state prison. *See, e.g.*, 61 Pa. C.S. §6138 (setting forth Pennsylvania Parole Board's authority for parole violations). Thus, it appears that Knight is currently confined due to a parole violation.

The Court recognizes that Knight does not reference parole proceedings in his petition. Nevertheless, the only reasonable interpretation of Knight's petition is that he is challenging a Parole Board decision to recommit him to state prison after revoking his parole. So construed, Knight's petition has a procedural issue that he must address. Namely, it does not appear that he exhausted his state-court remedies prior to filing his petition.

A state prisoner such as Knight, who is seeking to invoke the power of this Court to issue a writ of habeas corpus, must have exhausted the remedies available to them in the courts of the state. *See* 28 U.S.C. §2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a

person in custody pursuant to the judgment of a State court shall not be granted unless it appears that[] . . . the applicant has exhausted the remedies available in the courts of the State."). "It is axiomatic that a federal court may not grant a petition for a writ of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts." *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997) (citation omitted); *see also* 28 U.S.C. §2254(b)(1). A federal court may consider a habeas petition only after the petitioner "'fairly present[s' their] claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). In other words, to fully exhaust their state remedies, a habeas petitioner must invoke "one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also* 28 U.S.C. §2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if [they] ha[ve] the right under the law of the State to raise, by any available procedure, the question presented.").

Habeas petitioners are required to exhaust state remedies because exhaustion "addresses federalism and comity concerns by afford[ing] the

state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Lambert*, 134 F.3d at 513 n.18 (citation and internal quotation marks omitted). Therefore, although the exhaustion requirement is a comity concern and not a jurisdictional concern, it "should be strictly adhered to because it expresses respect for our dual judicial system." *Caswell v. Ryan*, 953 F.2d 853, 857 (3d Cir. 1992) (citation omitted). In addition, "[e]qually as important, federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review." *Rose v. Lundy*, 455 U.S. 509, 519 (1982). The petitioner bears the burden of demonstrating that they have satisfied the exhaustion requirement. *See Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000) ("The burden of establishing that [Section 2254 habeas] claims were fairly presented falls upon the petitioner." (citing *Lambert*, 134 F.3d at 513)).

To properly exhaust a claim challenging the Parole Board's revocation of parole, recommitment, and recalculation of the sentence, a Section 2254 habeas petitioner must first file an appeal or a petition for administrative review with the Parole Board. *See* 37 Pa. Code §73.1(a) ("An interested party, by counsel unless unrepresented, may appeal a revocation decision."); *id.* §73.1(b) ("A parolee, by counsel unless unrepresented, may

- 11 -

petition for administrative review under this subsection of determinations relating to revocation decisions which are not otherwise appealable under subsection (a)."). The filing of an appeal or a petition for administrative review postpones the finality of the Parole Board's revocation decision "for purposes of appeal to a court until the [Parole] Board has mailed its decision on the appeal [or] . . . . response to the petition for administrative review." *Id.* §§73.1(a)(1), (b)(1). Once the Parole Board resolves the appeal or petition for administrative review, the petitioner must file a petition for review in the Commonwealth Court. *See* 42 Pa. C.S. §763(a) (establishing Commonwealth's exclusive appellate jurisdiction in certain cases, such as in, inter alia, "[a]ll appeals from . . . any Commonwealth agency having Statewide jurisdiction"); *Commonwealth v. Fells*, 518 A.2d 544, 544 (Pa. 1986) (explaining that challenges to the Parole Board's revocation of parole "are in the appellate jurisdiction of the Commonwealth Court"); *Borsello v. Colleran*, 833 A.2d 1213, 1215 (Pa. Commw. Ct. 2003) ("Appeals of the [Parole] Board's parole revocation and recommitment orders are within the exclusive appellate jurisdiction of the Commonwealth Court."). If the petitioner is unsuccessful in the Commonwealth Court, they must seek further review in the Pennsylvania Supreme Court before bringing a federal habeas action. *See Williams v. Wynder*, 232 F. App'x 177, 180 (3d Cir. 2007)

(unpublished) (concluding that Pennsylvania Supreme Court's Administrative Order 218 does not apply to appeals from Commonwealth Court decisions); *Jones v. Tritt*, No. 16-cv-1741, 2019 WL 314718, at *2 (M.D. Pa. Jan. 24, 2019) ("If a petitioner . . . fails to seek review from the Pennsylvania Supreme Court of an unfavorable disposition by the Commonwealth Court, then the claim remains unexhausted." (citing *Williams*, 232 F. App'x at 180)); *see also Jackson v. Clark*, No. 17-cv-249, 2018 WL 3040369, at *2 (W.D. Pa. May 16, 2018) (explaining that petitioner claiming that the Parole Board "erred in calculating his parole violation maximum sentence date" had to exhaust state-court remedies before filing Section 2254 petition), *report and recommendation adopted*, 2018 WL 3037189 (W.D. Pa. June 19, 2018).

Here, Knight does not indicate that he has filed any appeal from the Parole Board's decision with the Commonwealth Court, which is unsurprising considering the way he phrases his habeas claim in his petition. As such, it appears that the Court should dismiss his petition without prejudice to him refiling it once he fully exhausts his claim. *See Buxton v. Pennsylvania*, 398 F. App'x 704, 707 (3d Cir. 2010) (unpublished) (concluding that district court properly determined that Section 2254 petitioner's "challenge to [his] parole revocation [w]as unexhausted because [the petitioner did] not claim to have

appealed" the Parole Board's decision to the Commonwealth Court). Nevertheless, because it is possible that the Court has misconstrued Knight's habeas petition, the Court will provide him with the opportunity to challenge the Court's construction of his habeas claim and direct him to show cause why the Court should not dismiss his petition without prejudice for failure to exhaust.

As an aside, if Knight actually raises a straight forward over-detention claim in his petition, *i.e.*, that he has been continually incarcerated past his maximum sentence date on October 6, 2024, the petition still presents an exhaustion issue insofar as Knight does not indicate in his petition that he has already litigated his claim in the Pennsylvania state courts, or that (1) "there is an absence of available State corrective process" or (2) "circumstances exist that render such process ineffective to protect" his rights. 28 U.S.C. §2254(b)(1)(B). Moreover, the applicable statute of limitations potentially bars Knight's over-detention claim. *See* 28 U.S.C. §2244(d)(1) (providing applicable one-year statute of limitations for Section 2254 habeas petitions).

Overall, there are several issues with Knight's petition that he must address for this matter to proceed further. He must inform the Court whether his current state confinement is the result of parole revocation proceedings.

- 14 -

In addition, he must identify the steps, if any, he has taken to pursue his over-detention claim in the state courts, and explain why the Court should not dismiss his petition without prejudice due to his failure to exhaust. Furthermore, if he still contends that he has been continually incarcerated since October 6, 2024, on his YCCP sentence, he must explain why the Court should not dismiss his petition for his failure to exhaust or as time barred.

## IV.   CONCLUSION

For the reasons stated above, the Court will direct Knight to provide more information about the circumstances surrounding his habeas claim and order him to show cause why the Court should not dismiss the petition for failure to exhaust or because it is time barred. An appropriate Order follows.

MALACHY E. MANNION
United States District Judge

DATE: 7/14/26

26-1508-01

- 15 -